```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS

JOSE HERNANDEZ,                    )
                                   )
        Petitioner,                )
                                   )
v.                                 )   CIVIL ACTION
                                   )   NO. 20-11794-DPW
STEVEN KENNEWAY,                   )
                                   )
        Respondent.                )
```

MEMORANDUM AND ORDER
December 13, 2021

Petitioner Jose Hernandez was convicted of first-degree murder in Massachusetts state court. He now seeks a federal writ of habeas corpus under 28 U.S.C. § 2254. He argues that the prosecution withheld material exculpatory evidence before trial, in violation of the Due Process Clause of the Fourteenth Amendment. *See generally Brady* v. *Maryland*, 373 U.S. 83 (1963); *Kyles* v. *Whitley*, 514 U.S. 419 (1995). The Supreme Judicial Court of Massachusetts upheld the petitioner's conviction on appeal and affirmed the denial of a motion for a new trial. I defer to the state court's factual findings and find the SJC reasonably applied established federal law. Consequently, I will deny federal habeas relief.

## I. BACKGROUND

### A. *Factual Background*

I accept the state courts' reports regarding factual determinations absent clear and convincing evidence of error.

28 U.S.C. § 2254(e)(1). The facts as the jury could have found them were outlined by the SJC in the last fully reasoned statement of the factual determinations by the state courts[1]:

> On the evening of June 7, 2009, the defendant and his friend, Jorge Santiago, were drinking beer and using heroin at the defendant's home in Lawrence. As the defendant was inspecting a firearm that Santiago showed him, the victim knocked at the door, announced himself, and said he wanted to purchase narcotics. Without opening the door, the defendant told the victim to "[g]et away" and to "[c]all [his] workers." The victim persisted, knocking again and stating that the defendant's workers "do not answer the phones." The defendant opened the door and began to argue with the victim.
>
> The victim eventually walked back to his motor vehicle, which was parked in front of the defendant's home, and started the engine. The defendant walked up to the passenger side of the motor vehicle, where the argument continued. The defendant then pulled the handgun from his pocket[,] fired it into the vehicle, and walked away. The victim's motor vehicle thereafter proceeded a short way down the street, left the roadway, knocked down a fence, and crashed into motor vehicles parked in a nearby lot. Neighbors found the victim breathing but unable to respond to questions. He died soon after from a gunshot wound to the chest.
>
> In the meantime, after the shooting, the defendant hid the firearm in a tree stump located in the backyard of a neighboring home and then contacted a friend, Miguel Sierra, who retrieved (and later sold) the firearm and provided the defendant with travel arrangements to Connecticut the next day. In November 2009, the defendant was located and arrested in Connecticut.

---

[1] I look to the facts as recited by the SJC in this circumstance. *See generally Strickland* v. *Goguen*, 3 F.4th 45, 47–48 (1st Cir. 2021) (relying on the last reasoned state court decision "in crafting the factual and procedural narrative"). My recitation in this Memorandum is "supplemented with other record facts consistent with the SJC's findings." *Healy* v. *Spencer*, 453 F.3d 21, 22 (1st Cir. 2006).

*Commonwealth* v. *Hernandez*, 113 N.E.3d 828, 830-31 (Mass. 2019) (first, second, and third alterations in original).

At trial, Mr. Hernandez argued self-defense. As the Massachusetts Superior Court motions judge[2] observed, he testified that the victim appeared to reach for a shiny object resembling a gun and told him: "Okay, I'm going to leave, but don't give me your back because if you do, I'm going to kill you. You know what, I'm going to kill you right now." Nevertheless, "[t]he prosecution presented evidence that the only items found in the motor vehicle in which the victim sat were a steering wheel locking device, a baseball hat, a cigarette lighter, a cellular telephone, and a twenty dollar bill." *Hernandez*, 113 N.E.3d at 836. The prosecution argued that none of these items could have been mistaken for a firearm. *Id.*

Following the jury's guilty verdict of first-degree murder, Mr. Hernandez was given a life sentence without parole.

**B. Brady *Claim***

Mr. Hernandez appealed his conviction and sentence. On May

---

[2] Judge Feeley of the Massachusetts Superior Court ruled on two motions in this case, a motion to dismiss and a motion for a new trial. Then-Judge Lowy of the Massachusetts Superior Court tried the case, but was later appointed to the SJC. Thus, it fell to Judge Feeley to resolve the new trial motion, having previously ruled on the motion to dismiss. I refer to Judge Feeley as the "motions judge" in this Memorandum. Needless to say, now-Justice Lowy did not sit on the SJC panel which resolved petitioner's appeal.

3

7, 2015, the day before scheduled oral argument in the SJC, his counsel learned of work-related performance issues involving a prosecution witness, Erik Koester. Koester, a chemist with the Massachusetts State Police Crime Laboratory, had testified as the crime scene supervisor that at the scene he inspected the outside of the victim's vehicle and searched the surrounding area. Koester also testified regarding gunshot residue on the victim's clothes.

As explained by the SJC:

> The trial in this case began on March 21, 2012. On March 9, 2012, Koester was informed that the "satisfactory" result he had previously received on his 2011 crime scene proficiency test had been rescinded and that instead he received an "unsatisfactory" result due to his method of measuring blood spatter. On March 15, 2012, a member of the crime lab quality assurance management section was informed that Koester received "unsatisfactory" results on his 2010 crime scene proficiency test, also as a result of improperly measured blood spatter evidence. This information was not disclosed to the defense prior to trial.

*Hernandez*, 113 N.E.3d at 834. After trial, the prosecution became aware further that Koester failed a trace evidence proficiency test in 2011. *Id.* at 835. Koester resigned from the crime lab on April 1, 2014.

Koester's deficiencies were not made known to defense counsel before the trial was concluded.

1.  New Trial Motion

When Mr. Hernandez's counsel learned of the withheld information, oral argument before the SJC was postponed to allow

4

Mr. Hernandez to file a motion for a new trial, and he submitted one to the SJC on July 24, 2015.  The SJC remanded the motion to the Essex County Superior Court on July 27, 2015, where the motions judge, *see supra* note 2, denied it on December 27, 2016.  Mr. Hernandez immediately appealed that decision to the SJC, which consolidated the new trial motion appeal with Mr. Hernandez's initial appeal of the conviction.

On January 9, 2019, in the course of sustaining Mr. Hernandez's conviction and sentence, the SJC affirmed the denial of his motion for a new trial.  On March 6, 2019, the SJC denied his petition for rehearing.  On October 7, 2019, the Supreme Court of the United States denied Mr. Hernandez's petition for certiorari.

2.   Consolidated Consideration by the SJC

In the argument he ultimately presented to the SJC, Mr. Hernandez based his contentions on a *Brady* claim arising from the evidence of Koester's performance issues.  The SJC concluded that the Koester evidence should have been disclosed to Mr. Hernandez, but that he was not entitled to a new trial "because the new evidence would not have been 'a real factor in the jury's deliberations.'"  *Hernandez*, 113 N.E.3d at 835-36 (quoting *Commonwealth* v. *Grace*, 491 N.E.2d 246, 306 (Mass. 1986)).

Mr. Hernandez "claimed that the Commonwealth used Koester to bolster generally the credibility of the investigation and

5

that the Koester deficiency evidence could have been used to raise doubts as to the thoroughness of the search of the vehicle." *Hernandez*, 113 N.E.3d at 836.  But the SJC disagreed:

> First, although Koester was involved in the investigation, he neither searched the motor vehicle at the scene nor participated in the more thorough search that took place at the tow yard.  In fact, his participation in the investigation at the crime scene yielded nothing of evidentiary value.  Further, although Koester was present at the crime scene in a supervisory role, he supervised other crime scene analysts, not the police sergeant who searched the vehicle at the scene.  Koester's only substantive testimony at trial pertained to the gunshot residue recovered on the victim's clothes, an issue that was ultimately made moot by the defendant's own admission that he shot the victim.[3]

*Id.* (footnote not in original).

Mr. Hernandez's petition to this Court is based on the withholding of the impeachment evidence concerning Koester.

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2241-55, on habeas review of a state court decision, the first question for a federal court is "whether the state court ever adjudicated the relevant claim on the merits."  *Junta* v. *Thompson*, 615 F.3d 67, 71 (1st Cir. 2010) (citing *Clements* v. *Clarke*, 592 F.3d 45, 52 (1st Cir. 2010)).  The second question, assuming the state court adjudicated the

---

[3] Koester was the lab technician who authenticated the shirts worn by the victim and tested holes in two of the shirts for gunshot residue.  One of these shirts was positive for lead, the other negative.

6

claims on the merits, is whether the state court erred in any one of the three ways identified in AEDPA as giving rise to relief.  A federal court may only grant habeas relief if the state court proceeding 1) "resulted in a decision that was contrary to . . . clearly established Federal law," § 2254(d)(1); 2)"involved an unreasonable application of[] clearly established Federal law," *id.*; or 3) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

As to the first two categories of potentially cognizable errors, which together appear in § 2254(d)(1), the Supreme Court of the United States has offered guidance through its case law.

A state court's legal decision is "contrary to . . . clearly established Federal law" if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams* v. *Taylor*, 529 U.S. 362, 413 (2000).

A state court's legal decision "involve[s] an unreasonable application of[] clearly established Federal law" if "the state court identifies the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the . . . prisoner's case."  *Id.* at 407.  To address this type of potentially cognizable error, a federal "habeas court

7

must determine what arguments or theories supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." *Harrington* v. *Richter*, 562 U.S. 86, 102 (2011). This is a demanding burden and "was meant to be." *Id.* As the Supreme Court has observed, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* In the First Circuit, "if it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." *McCambridge* v. *Hall*, 303 F.3d 24, 36 (1st Cir. 2002).

As to the third basis for potentially cognizable error — factual determinations which appear within the scope of § 2254(d)(2) — the statute itself offers guidance. State court factual determinations are "presumed to be correct" absent "clear and convincing evidence" to the contrary. § 2254(e)(1). Placing this burden on a petitioner is meant to "further the principles of comity, finality, and federalism." *Guerrero* v. *Ryan*, 115 F. Supp. 3d 195, 201-02 (D. Mass. 2015) (quoting *Dennis* v. *Mitchell*, 354 F.3d 511, 517 (6th Cir. 2003)).

### III. ANALYSIS

Mr. Hernandez petitions on the grounds that favorable evidence was withheld from him before trial – a *Brady* violation – and argues that, in considering this issue, the SJC rendered a

decision contrary to clearly established federal law, unreasonably applied clearly established federal law, and unreasonably determined the facts of the case. These arguments fail, but Mr. Hernandez does flag a linguistic issue that warrants some discussion concerning exculpatory impeachment evidence.

### A.   *Adjudication on the merits*

Mr. Hernandez raised the *Brady* issue in state court, and the SJC adjudicated this issue on the merits. *See Hernandez*, 113 N.E.3d at 834-36. Accordingly, I address the errors asserted in light of a record to be read under the directions of AEDPA.

### B.   *Was the SJC decision contrary to, or an unreasonable application of, clearly established federal law?*

Mr. Hernandez points to two aspects of the SJC's decision — the statement of the *Brady* standard used and the brief discussion of impeachment evidence — to argue both that the decision was "contrary to . . . clearly established law" and that the decision "involved an unreasonable application[] of clearly established law." Although Mr. Hernandez notes some language of concern, I find the SJC applied a valid standard and reasoned appropriately.

With respect to the *Brady* standard, Mr. Hernandez directs attention to the beginning of the SJC's analysis and argues that the language diverged from Supreme Court precedent. In its

9

inquiry, the SJC asked if there was a "*substantial risk* that the jury would have reached a different conclusion if the evidence had been admitted a trial." *Hernandez*, 113 N.E.3d at 836 (quoting *Commonwealth* v. *Murray*, 957 N.E.2d 1079, 1087 (Mass. 2011)) (emphasis added).[4]

With respect to the impeachment discussion, Mr. Hernandez suggests that a paragraph at the end of the SJC's decision demonstrates the SJC erroneously treated "evidence that is admissible for impeachment of a government witness as less deserving of protection."  In the questioned paragraph, the SJC wrote: "As the evidence regarding Koester's competence could have been introduced only to impeach him, its absence does not rise to the level of prejudice entitling the defendant to a new trial."  *Hernandez*, 113 N.E.3d at 836 (Mass. 2019).  For this proposition, the SJC cited state case law and included the following in a parenthetical: "Newly discovered evidence that tends merely to impeach the credibility of a witness will not ordinarily be the basis of a new trial."  *Id.* (quoting

---

[4] Mr. Hernandez further argues that the Commonwealth (citing *Commonwealth* v. *Azar*, 425 Mass. 675, 687 (2002)) elsewhere defined a "substantial risk of a miscarriage of justice" as occurring when there is "a serious doubt whether the result of the trial might have been different had the error not been made."  This further definitional gloss is beside the point, however, because the SJC's decision does not refer to that gloss.  Moreover, the phrase "substantial risk of a miscarriage of justice" is distinct from the phrase the SJC used here, "substantial risk that the jury would have reached a different conclusion if the evidence had been admitted at trial."

10

*Commonwealth* v. *Sullivan*, 85 N.E.3d 934, 948 (Mass. 2017)).

To evaluate these arguments, I must consider what is "clearly established Federal law" regarding a *Brady* claim of the type Mr. Hernandez presses in the federal habeas corpus petition now before me. A *Brady* claim requires 1) that evidence be "favorable to the accused, either because it is exculpatory, or because it is impeaching"; 2) that the evidence was "suppressed by the State, either willfully or inadvertently"; and 3) that "prejudice must have ensued." *Strickler* v. *Greene*, 527 U.S. 263, 282 (1999).

Prejudice — the key issue in this case because it is not disputed that favorable evidence was suppressed within the meaning of *Strickler* — arises when "there is a *reasonable probability* that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States* v. *Bagley*, 473 U.S. 667, 682 (1985) (emphasis added) (plurality opinion). As far as characterization of evidence is concerned, the Supreme Court has "disavowed any difference between exculpatory and impeachment evidence for *Brady* purposes." *Kyles*, 514 U.S. at 433.

While the SJC's language may be different from the Supreme Court's own articulation – styled as "substantial risk" versus "reasonable probability" – that alone is not fatal under § 2254(d)(1). A state court need not use identical language or even cite to an applicable Supreme Court decision. *See Early* v.

11

*Packer*, 537 U.S. 3, 8 (2002) (per curiam) (noting a state court decision "does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result . . . contradicts them" (emphasis in original)).

For its part, the First Circuit has found the SJC's "substantial risk" standard "akin to" the Supreme Court's "reasonable probability" standard. *Jackson* v. *Marshall*, 864 F.3d 1, 11 (1st Cir. 2017). The First Circuit in *Jackson* noted that the SJC in fact considers its standard "more favorable to petitioners than [the *Brady* standard]." *Id.* Thus, "a fortiori," by finding that evidence does not meet its "substantial risk" standard, the SJC finds a petitioner "not sufficiently prejudiced . . . under *Brady*." *Id.* Here then, by employing the same strict standard, the SJC's decision was not contrary to federal law. *Cf. Packer*, 547 U.S. at 8 (explaining it was "puzzling" that the Ninth Circuit found error where state court "impose[d] even *greater* restrictions" than required under federal law (emphasis in original)).

As for the specific argument about impeachment evidence, Mr. Hernandez is correct that the SJC summary statement of the relevant rule appears to mischaracterize the weight of impeachment evidence under *Brady*. The Supreme Court treats directly exculpatory and impeachment evidence equivalently as *Brady* claims. *Kyles*, 514 U.S. at 433. Consequently, the SJC stated incorrectly that, because "the evidence regarding

Koester's competence could have been introduced only to impeach him, its absence does not rise to the level of prejudice entitling the defendant to a new trial." *Hernandez*, 113 N.E.3d at 836.

However, Mr. Hernandez does not show that this isolated summary characterization makes the SJC's decision contrary to federal law. I must "presum[e] that state courts know and follow the law." *Woodford* v. *Visciotti*, 537 U.S. 19, 24 (2002) (per curiam); *see also Richter*, 562 U.S. at 104 (noting that "deference to [a] state court's determination" and avoiding "intervention in state criminal processes" is part of the "purpose and mandate of AEDPA and . . . the well-settled function of habeas corpus in the federal system"). A state court may misstate an aspect of law, but what matters under AEDPA is whether the court followed the correct rule. *See DeCiantis* v. *Wall*, 722 F.3d 41, 48 (1st Cir. 2013) (finding no error where state court referred to an abbreviated version of the *Brady* standard but also described the full, correct standard and clearly relied on that version); *Carter* v. *Duncan*, 819 F.3d 931, 944 (7th Cir. 2016) (finding no error where state court had stated the wrong standard but "its analysis [was] focused on . . . the correct inquiry").

The SJC here gave voice to a constitutionally valid standard — one actually more protective of a defendant's interests than federal law – and centered its analysis on that

13

standard, methodically reviewing Koester's role in the case against Hernandez. Only at the end of its opinion, after a full analysis under the valid standard, did the SJC include the improvident summary language at issue here. Understood in this context, I do not find the SJC's decision contrary to federal law.

I turn next to Mr. Hernandez's arguments as they relate to whether the SJC's decision "involved an unreasonable application of[] clearly established Federal law." § 2254(d)(1). Mr. Hernandez's arguments about the SJC's *Brady* standard and impeachment discussion do not dwell on this issue, no doubt because he focuses on the SJC's articulated legal standards – an issue addressed by the "contrary to" prong of AEDPA § 2254(d)(1) – rather than their application. Mr. Hernandez comes closest to attacking the SJC's application of law elsewhere in his petition, when he addresses the SJC's determination of facts.

C. **Was the SJC decision reflective of an unreasonable determination of the facts?**

Mr. Hernandez makes a broad argument that the SJC's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* § 2254(d)(2). He contends that the SJC "unreasonably failed to account for the actual facts contained in the record of the . . . motion for a new trial" and offers a different factual accounting. He discusses Koester's role in

14

the prosecution's case and the information revealed about his performance issues and then says the information about Koester "elevates the significance" of three pieces of evidence: a crime scene report showing that some items from the victim's vehicle were not taken to the crime laboratory; the fact that the trooper who searched the vehicle at the scene "came into possession of [the victim's] personal effects, which included 'two cigarette lighters'"; and a photograph of the vehicle that shows the twenty dollar bill, but not the other items apparently found, "while making it appear as if the vehicle had been photographed to display its contents at the time it was recovered." In sum, he argues, "[t]he newly discovered Koester evidence, in combination with the remainder of the evidence, revealed a substantial basis to doubt the prosecutor's assertion that no object that could have been mistaken for a weapon was present in [the victim's] car at the time he was shot."

While the Koester evidence may raise some question about the prosecution's assertions, Mr. Hernandez fails to show the SJC made an unreasonable determination of the facts. Unless Mr. Hernandez can show otherwise by "clear and convincing evidence," I presume that the SJC's factual determinations are correct. AEPDA § 2254(e)(1). For the most part, Mr. Hernandez simply rehashes facts that the SJC considered but he does not dispute their veracity. He also recites facts about Koester that the prosecutor learned of only *after* trial; those facts are not

15

relevant to the present inquiry, because such *ex post* information cannot form the basis of a *Brady* claim. *Cf. Strickler*, 527 U.S. at 282 (requiring that evidence was "*suppressed* by the State") (emphasis added). In any event, were any of this information valid as a *Brady* predicate, it would be cumulative of the evidence withheld, so it would not change the calculus.

Mr. Hernandez only appears to challenge a factual determination in the sense he argues that, with the evidentiary record and Koester revelations taken all together, there was, he says, "a substantial basis to doubt the prosecutor's assertion that no object that could have been mistaken for a weapon was present in [the victim's] car at the time he was shot." But he provides no "clear and convincing evidence" to contradict the SJC's conclusion otherwise.

The SJC fully reasoned its way through Koester's role in the case, including his investigation of the crime scene and testimony at trial. Mr. Hernandez has provided nothing to undermine that reasoning, other than his own disagreement. Indeed, nothing about the SJC's reasoning is in apparent conflict with the underlying facts as Mr. Hernandez understands them. Without more, I cannot find the SJC's decision based on an unreasonable determination of the facts.

Finally, I undertake to address what I recognize as an argument that might best be understood as concerning the SJC's

application of law, rather than its determination of facts. Accordingly, I recalibrate my own analysis to consider that Mr. Hernandez's arguments with respect to § 2254(d)(2) sound more as raising a claim under the application prong of § 2254(1) because they are really about the SJC's ultimate legal conclusion.

Such argument as recalibrated also fails. Mr. Hernandez ultimately does not meaningfully address whether "fairminded jurists could disagree" about the proposition that the SJC's "decision conflicts with [the Supreme Court's] precedents." *Harrington*, 562 U.S. at 102. Thus, even if some question arises about the thoroughness of the vehicle search in light of the revelation of Mr. Koester's performance issues, I nevertheless find that it was not unreasonable for the SJC to conclude that the Koester evidence would not likely have changed the jury's verdict. The SJC's decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## IV. CONCLUSION

For the reasons set forth above, I GRANT the Respondent's Motion [Dkt. No. 14] for Judgment on the Pleadings and direct the Clerk to dismiss this petition for writ of habeas corpus.

In accordance with First Circuit Local Rule 22.0(a), for those reasons I hereby decline to issue a certificate of appealability concerning the denial of petitioner's motion under

17

28 U.S.C. § 2254.  The petitioner has failed to make a substantial showing of the denial of a constitutional right with respect to his claims.

                                       */s/ Douglas P. Woodlock*
                                       DOUGLAS P. WOODLOCK
                                       UNITED STATES DISTRICT JUDGE